**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**NICK D. WELCH**                                                                              **PLAINTIFF**


**VERSUS**                                           **CIVIL ACTION NO. 2:08cv55KS-MTP**

**OAK GROVE LAND COMPANY, INC., FRED McMURRY,**
**DAVID E. JOHNSON, J. DOUGLAS SEIDENBURG, THE FIRST,**
**A NATIONAL BANKING ASSOCIATION, THE FIRST**
**BANKSHARES, INC., AND JOHN DOES 1-10**                         **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Remand **[#9]** filed on behalf of the

plaintiff.  The court, having reviewed the motion, the response, the briefs of counsel, the

pleadings and exhibits on file, and being otherwise fully advised in the premises, finds

that the motion is well taken and should be granted.  The court specifically finds as

follows:

## FACTUAL BACKGROUND

This case arises from the purchase of bank stock from the plaintiff, Nick D.

Welch, by the defendants.  Prior to the transfer, Welch owned 69,165 shares of

common stock, or a 5.82%ownership interest in The First Bancshares, Inc. ("FBMS"), a

Mississippi bank,  which has branches in Hattiesburg, Purvis, and Laurel, Mississippi.

On December 5, 2005, Fred McMurry ("McMurry") contacted Welch expressing an

interest in acquiring Welch's Stock in FBMS.  Later in December, McMurry contacted

Welch and formally offered to purchase his stock for $29 per share for a total purchase

price of $2,005,785.00.  Welch investigated the current trading price of FBMS stock and

verbally agreed to sell his interest in FBMS to McMurry.

   During the conversations between McMurry and Welch, McMurry informed Welch that the ultimate purchase of the stock would not be made by McMurry, individually, but by Oak Grove Land Company, Inc. ("Oak Grove"), which McMurry represented was a "family company" in which he was a shareholder. The parties agreed and a closing date for the transaction between Welch and Oak Grove was set for no later than February 3, 2006.

   On January 19, 2006, Welch and Katherine M. Driskell, President of Oak Grove, executed an Agreement for the Private Sale and Purchase of Shares of Stock in The First Bancshares, which conveyed Welch's stock to defendant Oak Grove. On that same date, and unknown to Welch, the FBMS Board of Directors approved the recommendation of defendant Johnson and bank management that the bank pursue the listing of its stock with the National Association of Stock Dealers Automated Quotation System or "NASDAQ."

   Final closing  for the transaction took place on February 2, 2006. Simultaneously with this February 2, 2006 closing, certain officers, directors and other shareholders of FBMS purchased shares of stock in FBMS for the identical price that Welch sold his stock to Oak Grove without Welch's knowledge.

   Two weeks after the closing, on February 16, 2006, the FBMS Board approved a two-for-one split of FBMS common stock to assist in its liquidity for NASDAQ listing purposes. FBMS waited six days later, until February 22, 2006, to announce its Board of Directors' prior approval of the stock split. Immediately thereafter, on February 23, 2006, FBMS filed its application to list its common stock on the NASDAQ Capital

Market.

After finding out about the stock split and subsequent listing application through a press release, Welch, on April 11, 2006, filed suit against the named defendants in Jones County Circuit Court, Second Judicial District, Cause No. 2006-263-CV4, asserting solely state common law claims for intentional misrepresentation and omission, negligent misrepresentation and omission, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and conspiracy.  Welch contends that had he known about the stock split and/or the proposed NASDAQ listing, he would not have sold his FBMS stock to defendant Oak Grove for the price he did.

On May 5, 2006, the defendants removed this case from the Jones County Circuit Court to this court, arguing that Welch's state common law claims were artfully pled claims arising under the Securities Exchange Act of 1934 ("the 1934 Act"), the Private Securities Litigation Reform Act ("the PSLRA"), and the RICO Act.  Welch promptly filed a motion to remand which was granted by the court on March 28, 2007. Recognizing that Welch's complaint stated only state law causes of action, the court held:

> Unquestionably, Welch's complaint alleges facts that may be violations of the 1934 Act. His complaint also alleges exclusively state law causes of action for the course of conduct alleged to have been conducted by Oak Grove, et al. If Congress has clearly stated its intent that a federal civil action is to be the plaintiff's exclusive remedy, then removal is proper. However, Congress has not so stated nor have courts found that state law contract claims cannot be used for factual scenarios that may also constitute violations of the 1934 Act.
>
> . . .
>
> By limiting himself to purely state law claims and voluntarily relinquishing the protections of the 1934 Act, he significantly limits the proof that he will be allowed to present and the remedies requested. The 1934 Act was designed to

supplement state causes of action and not preclude them. However, if Welch
attempts to deviate from his state law contract claims and pursue the benefits of
the 1934 Act, then the exclusive federal jurisdiction of claims under the 1934 Act
would be invoked.

On February 11, 2008, Welch filed his Designation of Expert Witnesses in state

court pursuant to Miss.R.Civ.P. 26(b)(4)(A)(I).  He designated Christopher Bebel, a

securities lawyer, to testify as to "disclosure obligations attending a securities listing

initiative" and the "importance of full and fair disclosure of facts attending a securities

initiative to a prospective securities transaction."  *See* Pl.'s Designation of Experts at pg.

2.  According to the defendants, Bebel has been designated to provide testimony as to

the basis of the defendants' alleged liability with regard to the defendants' disclosure

obligations.

As a result of this disclosure, the defendants re-removed the action to this court

on March 12, 2008.  The defendants assert that an embedded federal question has

arisen through the existence of "other paper" - i.e., the expert designation.  The plaintiff

has timely filed a motion to remand arguing improvident removal and requesting

attorneys' fees and costs in addition to remand.  The parties have engaged in agreed

remand related discovery and the matter is now before the court.

## STANDARD OF REVIEW - REMAND

The Fifth Circuit has consistently held that the party urging jurisdiction upon the

district court bears the burden of demonstrating that the case is one which is properly

before that court.  *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993);

*Village Fair Shopping Co. v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir. 1979); *Ray v.

Bird & Son and Asset Realization Co., Inc.*, 519 F.2d 1081 (5th Cir. 1975).  Even though

this court has a limited jurisdiction whose scope is defined by the constitution and by statute, "[w]hen a federal court is properly appealed to in a case over which it has, by law, jurisdiction, 'it has a duty to take such jurisdiction.'" *England v. Louisiana Medical Examiners,* 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440, 445 (1964) (other citations omitted).  Chief Justice Marshall wrote in *Cohens v. Virginia*, 19 U.S. 264, 5 L.Ed. 257, 291 (1821), "It is true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should."

## ANALYSIS

In order for the court to properly entertain removal jurisdiction pursuant to 28 U.S.C. § 1441(b) under federal question auspices, the cause of action must be one which arises "under the Constitution, laws or treaties of the United States."  28 U.S.C. § 1331.  A suit arises under federal law if some substantial, disputed question of federal law appears on the face of the well pleaded complaint (or in this case, some "other paper").  *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S. Ct. 2841, 2848, 77 L. Ed. 2d 420 (1983).   "A defendant may not remove on the basis of an anticipated or even inevitable federal defense, but instead must show that a federal right is 'an element, and an essential one, of the plaintiff's cause of action.'"  *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362 , 366 (5th Cir. 1995)(quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 111, 57 S. Ct. 96, 97, 81 L. Ed. 70 (1936)).

The defendants specifically employ the artful pleading doctrine as a basis for removal claiming that Welch is attempting to plead around the 1934 Act and any Rule

10b-5 claims by casting his claims as those brought under state law.  The defendants recognize that the artful pleading doctrine is a *narrow* exception to the well pleaded complaint rule, and applies only when one has inappropriately characterized his federal claim as a state claim.  The "artful pleading" exception is applicable only in the case of complete preemption.  *See Carpenter v. Wichita Indep. Sch. Dist.*, 44 F.3d at 367.

This court has already found that the 1934 Act provides exclusive federal jurisdiction for actions "brought to enforce any liability or duty created by (the Act) or the rules and regulations thereunder." 15 U.S.C. § 78aa.  *See also Hawkins v. National Association of Securities Dealers, Inc.*, 149 F.3d 330 (5th Cir.1998).  It does not, however, provide exclusive federal jurisdiction for otherwise viable claims that exist at common law. Indeed, the text of the 1934 Act itself provides:

> (T)he rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist in law and equity. . . nothing in this chapter shall affect the jurisdiction. . . of any state over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations thereunder.

15 U.S.C. § 78bb (emphasis added); *see also In re Taxable Municipal Bonds*; 1993 WL 165729 (E.D. La. 1993) (holding Rule 10b-5 claim not necessary to plaintiff's claim for common law fraud).  The 1934 Act does not preempt Welch's common law misrepresentation claims.  Therefore, the artful pleading doctrine simply does not apply.

Complete preemption applies in areas where Congress has chosen to completely extinguish the existing state common law concerning a subject matter area. Under Supreme Court precedent, "a state claim may be removed to federal court in only two circumstances - when Congress expressly so provides, such as in the Price-Anderson Act, . . .  or when a federal statute wholly displaces the state-law cause

of action through complete preemption." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 2063, 156 L.Ed.2d 1 (2003). These can be characterized as "express" preemption and "assumed" preemption, both complete in nature. There is a third kind of preemption, conflict preemption, which is a defense and does not support removal jurisdiction. *See Perry v. Mercedes Benz of N. Am. Inc.*, 957 F.2d 1257 (5th Cir. 1992).

To support the re-removal, the defendants point out that in arriving at his ultimate opinion, Bebel has identified sixty-three documents that he reviewed in reaching his conclusions and formulating his opinions in this case. The first twenty-five items listed are various pleadings and discovery in this matter. Items twenty-six through sixty-three are, according to the defendants, "all federal authorities." The defendants use the words "federal authorities" loosely.

A careful review of the so-called "federal authority" documents relied upon by Bebel reveals that the bulk of them are actually FBMS public disclosure documents and the NASDAQ rules and regulations governing the filing of such documents in order to secure a listing on the NASDAQ. The only "federal authority" listed is Item No. 42, an SEC Staff Accounting Bulletin which concerns materiality in the context of SEC reporting obligations.

The defendants contend that this list of documents shows that the plaintiff is actually relying on federal causes of action and pursuing the benefits of the 1934 Act contrary to his assertions of reliance on only state law claims. Specifically, they assert that the documents demonstrate Bebel's reliance on standards for materiality and disclosure mandated under the 1934 Securities Act. None of the documents relied

upon by Bebel relate to state common law duties arguably breached by the defendants.

Bebel does not, however, contend that the defendants are liable to the plaintiff simply because of the requirements of the documents he reviewed.  Indeed, materiality is an element of Welch's common law misrepresentation claims.  Further, it is not inappropriate to refer to a federal law, rule, or guideline, as a "measuring rod" for a state law cause of action.   *See Grable and Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)(holding reference to federal regulations in complaint as "measuring rod" to gauge evidence of state law not a basis for removal).

The plaintiff argues that the defendants suggest, without elaboration, that Welch seeks to impose the disclosure requirements of the 1934 Act upon the defendants but they do nothing to illustrate how such a duty of disclosure under the 1934 Act is more stringent, or less stringent, or different than the duty of disclosure in the context of an intentional or negligent misrepresentation by omission, which is a creature of state common law.

The plaintiff correctly points out that the black letter common law in Mississippi is that a duty to disclose arises when silence amounts to an affirmation of something that did not exist.  *Guastella v. Wardell*, 198 So.2d 227 (Miss. 1967) (fraud exists where silence amounts to affirmation that a state of things existed which did not exist).  Under those circumstances, one's silence is just as much a misrepresentation as an affirmative  misstatement of fact.  *See Holman v. Howard Wilson Chrysler Jeep, Inc.*, 972 So.2d 564 (Miss. 2008) (stating "the failure of a party to a business transaction to speak may amount to the suppression of a material fact which should have been

disclosed and is, in effect, fraud."); *see also* Restatement (Second) of Torts § 551.

Likewise, the well-established law in Mississippi is that in order to recover damages for

a misrepresentation, whether intentional or negligent, and whether by omission or

commission, the plaintiff is required to prove that the misrepresentation was material.

*Holman*, 972 So. 2d at 568 (materiality is an element of intentional misrepresentation);

*Culbreath Revocable Trust v. Sanders*, 979 So.2d 704 (Miss. Ct. App. 2007) (materiality

is an element of negligent misrepresentation).

      Thus, Welch asserts that he is not pursuing any of the benefits of the 1934 Act

because the duty of disclosure and the question of materiality are both required

elements of his claims for misrepresentation by omission.  The defendants merely state

without support that Welch has attempted to derive some benefit from the 1934 Act by

virtue of his expert's reliance on federal materials in formulating his opinions.

      The defendants also find a nefarious intent in Bebel's conduct after re-removal of

this action.  According to billing records, six days after the removal of this action, Bebel

began reviewing Mississippi state law materials including judicial decisions and

statutory and regulatory requirements in relation to the defendants's alleged breaches.

*See* April 28, 2008, Bebel Invoice.  Bebel also testified in his remand related deposition

that he did not review the Mississippi Securities Act until after his February 11, 2008,

designation.  He also testified that he is not an expert on any single aspect of any state

law cause of action asserted by the plaintiff in his Amended Complaint.  Nor do any of

Bebel's original opinions refer to the defendants' obligations under Mississippi state law.

      However, Welch has not designated Bebel as an expert witness on state or

federal securities laws.  The plaintiff points out that he was designated for the purpose

of assisting the jury to identify the alleged misrepresentations or omissions by the defendants in the context of a stock purchase and NASDAQ application, and whether the facts withheld or omitted were significant or material. Bebel is an attorney with extensive experience in state and federal securities matters and merely because he reviewed Mississippi cases as part of his review and preparation, does not mean that Bebel will purport to instruct whomever is the ultimate finder of fact on what the law is.

A review of Bebel's opinons reveals that Bebel does not contend that any of the rules, listing requirements, or public disclosures evidence a violation 10b-5 or any other federal law. He does not contend the defendants are liable to Welch pursuant to any federal authority that established any of the listing criteria or reporting obligations that Bebel reviewed. Rather, Bebel's review of those materials was apparently part of his inquiry into the facts that are available in the public domain which are publicly available because federal law mandates that they must be made public.

The defendants are claiming express preemption of the plaintiff's claims in this case. By doing so they contend that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *See Franchise Tax Bd.*, 463 U.S. at 27-28. That "substantial question of federal law," according to the defendants, is what they characterize as the gravamen of the plaintiff's amended complaint being a breach of duty under the disclosure requirements of the 1934 Act and Rule 10b-5. Thus, the defendants argue that either the plaintiff's claims are "created by" federal law or at least "arise under" federal law.

In order to advance the "created by" federal law argument, the defendants must show that Welch's amended complaint states claims regarding rights and duties

stemming exclusively from the disclosure requirements of the 1934 Act and Rule 10b-5 which Congress has mandated are federal in nature.  The court cannot agree with this argument.

This court starts from the proposition recognized by the Supreme Court that "uniform federal law need not be applied to all questions in federal government litigation . . .." *Empire Healthchoice Assurance, Inc. v. McVeigh*, ___ U.S. ___, 126 S.Ct. 2121, 2131, 165 L.Ed.2d 131 (2006)(*quoting* R. Fallon, D. Mltzer, & D. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System700 (5th Ed. 2003)).  This court recognizes that It is well settled that "private parties in appropriate cases may sue in federal court to enforce [ ] rights created by federal statutes." *Jackson Transit Authority v. Transit Union*, 457 U.S. 15, 22,  122 S.Ct. 2202, 72 L.Ed.2d 639 (1982).  *See also Nelon v. Mitchell Energy Corp.,* 941 F.Supp. 73, 75 (N.D. Tex. 1996)(finding that the mere fact that a state court must interpret federal law or federal regulations to determine the merits of a claim is insufficient to confer federal jurisdiction).

Consequently, if a plaintiff brings suit to enforce rights created by federal statutes in state court, the case is removable.  The problem here is that there are no claims asserted by the plaintiff in the amended state court complaint nor in the "other paper" relied upon by the defendants for removal which seek to vindicate federal rights.  Such claims are specifically waived and the defendants certainly may not re-write the complaint so as to make it removable.  Neither can they turn the plaintiff's legitimate state law claims into federal ones by simply asserting that the one of the plaintiff's expert witnesses relies upon federal rules or regulations to illustrate a breach of state law duties.  Indeed, violations of federal statutes are generally treated as negligence

-11-

per se in state court actions but it would undermine congressional intent to conclude that federal courts could exercise jurisdiction merely because such violations could be characterized as proximate cause under state law.  *See Grable and Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. at 316-19.  None of the claims asserted in the plaintiffs' state court complaint were "created by" federal law, regardless of the defendants' attempts to recast them otherwise.

Any contention that the plaintiff's claims in his amended complaint  "arise under" federal law meet the same fate as the prior argument.  The plaintiff asserts that this case is controlled by the embedded federal claims analysis set forth in *Grable*.  In *Empire*, the Supreme Court clarified its earlier holding in *Grable*.  *Grable* dealt with a claim that was said to "arise under" federal law as opposed to one created thereby.  The defendants contend while the case is not controlled by *Grable,* it does illustrate the same embedded federal question issues in that an interpretation of the 1934 Act will be dispositive of this case.  However, *Empire* recognized that the *Grable* holding was very narrow and dealt with a situation where the only contested issue in the case was the interpretation of a federal tax statute and presented a "pure issue of law."  126 S.Ct. at 2137.  And even *Grable* emphasized that there must be more than merely a federal element present in order "to open the 'arising under' door" to the federal court.  545 U.S. at 313.

Here, the defendants have shown no more than that there is merely a federal element present, i.e., that one or more of the plaintiff's experts have relied on federal authority to illustrate a breach of state law duty.  Clearly, the claims asserted by the

plaintiff do not arise under any federal law, regardless of the characterization of the defendants otherwise.  Welch has specifically disavowed seeking any redress pursuant to any federal law or regulation, which is his right and was clearly recognized in this court's prior remand order.  Welch's claims are strictly state common and state statutory law and involve no right created by or arising under federal law.

The court therefore finds that the defendants have not shown:1) that a federal right is an essential element of the plaintiff's state law claim; 2) that interpretation of a federal right is necessary to resolve the case; or 3) that a question of federal law is substantial.  Failure to show any one of these elements is fatal to their re-removal of this case.  *See Howery v. Allstate Insurance Co.,* 243 F.3d 912, 918 (5th Cir. 2001).  In fact, the court finds that the question of whether or not the expert designation by the plaintiff appropriately allowed the defendants to re-remove this case is not even close. It is clear that no federal question jurisdiction was created by the filing of the designation.  As such, the court concludes that the re-removal was improvident.

Welch has again asked the court to award payment of costs and attorney fees incurred in securing the remand of the defendants' improvident removal pursuant to 28 U.S.C. § 1447(c). That section and subpart provide for an award of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  *See Gannett River States Pub. Corp. v. Mississippi State University*, 945 F.Supp. 128, 131-132 (S.D.Miss. 1996).  The award of attorney fees and costs is within the discretion of the court, thus the court is not required to make a finding bad faith, negligence or frivolousness.  *Miranti v. Lee*, 3 F3d 925, 928 (5th Cir.1993); *News-Texan, Inc. v. City of Garland, Texas*, 814 F.2d 216, 220 (5th Cir.1987).  Further, while the amended section

-13-

no longer contains the language requiring the district court to find that "the case was removed improvidently and without jurisdiction" in order to justify an award of costs and attorney fees, the Fifth Circuit has concluded that an attorney fee award does indeed require the court to review the propriety of a defendant's removal. *Miranti,* 3 F3d. at 928.

This case was set for trial in state court within a short time when the defendants re-removed it to this court. Welch asserts that the removal of this case to federal court has, for the second time, "resulted in a remarkable waste of time, money, and resources of both Welch and the Court." The court has found that the question of federal jurisdiction asserted by the defendants was not close and that the re-removal was improvident. Thus, the court concludes that an award of costs and attorney fees is warranted.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Remand **[#9]** filed on behalf of the plaintiff is hereby granted and this matter is remanded to the Circuit Court for the Second Judicial District of Jones County, Mississippi, and the Clerk of the court is directed to return the file thereto forthwith.

IT IS FURTHER ORDERED AND ADJUDGED that the court will retain jurisdiction over the attorney fee and cost matter to allow the plaintiff ten days from the date of this order to submit an itemization of costs and attorney fees and supporting documents. The defendants shall file any response thereto within five days thereafter.

SO ORDERED AND ADJUDGED this the 14th day of August, 2008.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE